UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE ALEXANDER,

        Plaintiff,                                   Case No. 16-cv-13293
                                                        Hon. Mark A. Goldsmith

vs.

NICHOLAS CALZETTA, et al.,

        Defendants.
_____/

**OPINION & ORDER**
**ADOPTING IN PART THE REPORT AND RECOMMENDATION (Dkt. 93);**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT (Dkt. 46); AND GRANTING IN PART AND DENYING IN**
**PART DEFENDANT MEDEN'S MOTION FOR SUMMARY JUDGMENT (Dkt. 53)**

Plaintiff D'Andre Marquis Alexander brought this civil rights action against eighteen defendants, alleging violations of the First, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, conspiracy pursuant to 42 U.S.C. § 1985, and state law claims for negligence, gross negligence, and intentional infliction of emotional distress ("IIED"). See Compl. (Dkt. 1). Fifteen defendants (the "State Defendants") filed a motion for summary judgment (Dkt. 46). Defendant Dr. Terry Meden, a psychiatrist, also filed a separate motion for summary judgment (Dkt. 53). On February 26, 2018, Magistrate Judge Anthony Patti issued a Report and Recommendation ("R&R"), in which he recommended granting in part and dismissing in part each of the motions for summary judgment. See 2/26/2018 R&R (Dkt. 93). The State Defendants, Dr. Meden, and Alexander timely filed objections to the R&R (Dkts. 95-97). For the following reasons, the Court adopts in part and rejects in part the R&R (Dkt. 93); overrules Dr. Meden's objections (Dkt. 96); sustains in part and overrules in part the State Defendants' objections (Dkt. 95); overrules

1

Alexander's objections (Dkt. 97); grants in part and denies in part Dr. Meden's motion for summary judgment (Dkt. 53); and grants in part and denies in part the State Defendants' motion for summary judgment (Dkt. 46).

## I.  BACKGROUND

The factual and procedural background has been adequately set forth by the magistrate judge and need not be repeated here in full. In brief summary, Alexander, who was formerly incarcerated in the Marquette Branch Prison ("MBP"), alleges that he was involved in a fight on February 2, 2015 and was taken to segregation. While in segregation, Alexander alleges that MBP staff intentionally allowed his television to be stolen in retaliation for filing grievances and a lawsuit. Alexander alleges that he was later released from segregation and learned who had stolen his television; when he informed prison staff, he was labeled a "snitch," a hit was ordered, and he was targeted by fellow prisoners. Between May 6 and August 11, 2015, Alexander alleges that he informed various State Defendants employed at MBP – specifically, Defendants Erica Huss, Mandi Salmi, Fred Govern, Kristine Giesen, Chad LaCount and Kenneth Niemisto – of his safety concerns, and requested to be placed in MBP F-Block's ICP (Intermediate Care Program). Alexander describes F-block as "a secure unit where prisoners ha[v]e no direct opportunities to have physical contact with each other." Compl. ¶ 17. Each of these defendants allegedly refused to place him in MBP F-Block. The State Defendants either deny that Alexander asked for protection, or do not recall him requesting such protection.

Alexander alleges that in July 2015, he drafted a request for a declaratory ruling, which was sent to the Michigan Department of Corrections ("MDOC") Director's office sometime in August or September 2015. Defendant Daphne Johnson, the Administrator of the MDOC Office of Legal Affairs, responded to three requests from Alexander for a declaratory ruling, but said that

2

she was not personally involved in any decisions regarding his placement. Alexander claims that he filed a grievance against Johnson on August 27, 2015, but that the grievance was confiscated on December 21, 2015, and he, therefore, cannot produce it.

On July 6, 2015, Alexander was treated by Dr. Meden. Alexander alleges that he asked Dr. Meden to place him in F-block, and Dr. Meden agreed. Dr. Meden conducted a psychiatric evaluation of Alexander and diagnosed him with brief Psychotic Disorder, Polysubstance Dependence, Antisocial Personality Disorder, and a history of noncompliance. Dr. Meden placed Alexander on a waitlist for transfer to an Interim Care Program.

Alexander was eventually placed in the F-Block ICP from August 11, 2015 through December 24, 2015; after that point, he was placed back into segregation. On January 26, 2016, Alexander was treated by Dr. Meden, who offered to have him sent to Woodland Center Correctional Facility ("WCC") Acute Care. Alexander alleges that he informed Dr. Meden that he was not comfortable with a transfer and Dr. Meden stated that he would not send Alexander to WCC. However, according to Alexander's treatment note, Dr. Meden "was able to get Alexander's agreement with WCC placement." See Pl's Medical Mgmt. Report, Ex. 2 to Def. Mot. (Dkt. 54-2). On January 27, 2016, Alexander was informed that he would be transferred to WCC.

Alexander alleges that at his first treatment team meeting after his transfer to WCC, he informed the WCC staff about the hit placed on him, and that he feared for his safety. On February 3, 2016, he alleges that a fellow inmate heard him speaking to another prisoner about the hit on him, and that inmate then "announced himself as a member of the gang that put the hit on [Alexander] and then attacked" him. Compl. ¶ 33 (Dkt. 1). Alexander alleges that he later expressed his safety concerns to State Defendants employed at WCC – Defendants Hanna Saad,

3

Dr. Rosen, Melvin Watkins, John Lewis, and Rodney Lee – but they refused to accommodate his need. On February 9, 2016, Alexander filed a grievance against Defendants Huss, Govern, Darrin Viitala, Nicholas Calzetta, Samli, Niemisto, Giesen, LaCount, and Dr. Meden (i.e., all MBP employees). See Prisoner/Parolee Grievance Form, Ex. 17 to State Def. Mot., at 25 (cm/ecf page) (Dkt. 46-18).

Alexander alleges that he was assaulted again on February 12, 2016 by a different inmate. He claims that he sought protection from Defendants Kyle Slaughter and Bobby Houston, but they refused to act. This same day, he also filed a grievance against State Defendants at both MBP and WCC stating that he "was attacked for the 2nd time by virtue of the hit thats [sic] on me. All above defendnents [sic] knew about the safety risk and protection request but failed to place me on PC." See Prisoner/Parolee Grievance Form, Ex. 6 to Pl. Resp., at 25 (cm/ecf page) (Dkt. 88). On February 16, 2016, Alexander allegedly informed Defendant Richard Idemudia of the situation and requested protection; he allegedly did not take any action and instead threatened retaliation.

The magistrate judge recommended (i) resolving the issue of exhaustion of claims against the WCC-based State Defendants at a bench trial or evidentiary hearing; (ii) dismissing Alexander's claims against Defendant Johnson; (iii) dismissing the Eighth Amendment claim against Defendants Govern, Giesen, LaCount, Niemisto, and Huss, but proceeding against Defendants Salmi, Calzetta, Viitala, and Dr. Meden; (iv) dismissing the retaliation claims against the MBP-based State Defendants; (v) dismissing the equal protection claim against all defendants; (vi) allowing the 42 U.S.C. § 1985 conspiracy claim to proceed; (vii) dismissing the negligence, gross negligence, and intentional infliction of emotional distress ("IIED") claims against Dr. Meden but allowing them to proceed against the MBP-based State Defendants; (viii) dismissing Alexander's claims for declaratory relief against the MBP-based State Defendants; and (ix)

4

dismissing the claims for money damages against Defendants Calzetta, Govern, Giesen, Viitala, LaCount, Niemisto, Huss, and Johnson. See R&R at 55-56.

## II. STANDARD OF REVIEW

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Dr. Meden, the State Defendants, and Alexander all filed objections to the R&R. The Court will address each in turn.

#### a. Dr. Meden's First Objection: Exhaustion

Dr. Meden first argues that the magistrate judge erred in concluding that Alexander had exhausted his administrative remedies as to his Eighth Amendment claims. Magistrate Judge Patti concluded that, because Alexander's February 9, 2016 grievance against Dr. Meden and the State Defendants at MBP was "reviewed and considered" on Step III appeal, it was "considered on its merits" and "not denied as untimely, or on some other procedural basis." R&R at 22.

Dr. Meden again argues that Alexander's grievance was untimely, since the incident in question – his transfer to WCC – occurred on January 26 or 27, 2016, and Alexander would, therefore, need to file a grievance by February 3, 2016. However, Magistrate Judge Patti did not dispute that Alexander's original filing may have been untimely; rather, he noted that the State did not reject it as such. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, as a general rule so will we." Reed-Bay v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010). Dr. Meden's objection is overruled.

#### b. Dr. Meden's Second Objection: Eighth Amendment

Second, Dr. Meden objects to the magistrate judge's finding that a genuine issue of material fact exists as to Alexander's Eighth Amendment claim. He argues that he cannot have failed to protect Alexander, because Alexander "willingly and voluntarily agreed to be transferred to WCC and voiced that his main concern with the transfer was receiving trustworthy medical treatment, not his physical safety." Def. Obj. at 5 (Dkt. 96).

In order to establish a claim of deliberate indifference under the Eighth Amendment, a plaintiff must meet two requirements. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prison official must be deliberately indifferent to inmate health or safety; that is, he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Dr. Meden claims that the R&R "fails to acknowledge [] that Plaintiff consented to the transfer." Def. Obj. at 6. He argues that even if Alexander's allegations that he informed Dr. Meden of a risk were true, the fact that Alexander voluntarily accepted the transfer could not have apprised Dr. Meden of any safety risk. He further argues that if Alexander changed his mind after the transfer, "he cannot turn back the clock and claim deliberate indifference once he voluntarily and willingly consented." Id.

Magistrate Judge Patti concluded that Alexander had created a genuine factual dispute as to Dr. Meden's subjective awareness, noting that Alexander "offers statements in his declarations that he did inform each of the Defendants of the safety risk, at or near the time of his transfer from MBP to WCC, but that they failed or refused to act." R&R at 38. Specifically, the R&R cites to Alexander's affidavit, where he stated that on January 27, 2016 – i.e. a day after Dr. Meden's notes

7

state that Alexander consented to transfer – "Defendant Meden approached my then cell and told me that I was about to be transferred to WCC. I complained about this decision and promulgated the fact that that [sic] I did <u>not</u> approve of the disregard of my safety risk. . . . At no time did Meden report/intervene the safety risk." Pl. Aff., Ex. 20 to Pl. Resp., ¶ 11 (Dkt. 86-2) (emphasis in original). Alexander also states that during their January 26, 2016 meeting, he had "told [Dr. Meden] that I didn't feel comfortable with being transferred there and re-iterated the safety concern again." <u>Id.</u> ¶ 10. Thus, viewing the evidence in a light most favorable to Alexander, the evidence suggests that there is a genuine dispute regarding whether Dr. Meden was aware of a safety risk at the time of Alexander's transfer.

Dr. Meden also argues that because his transfer recommendation was made in the best interest of Alexander's medical health, it was a reasonable response to a known risk. He cites to <u>Farmer</u>, where the Supreme Court explained that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844. However, Dr. Meden originally argued that "Plaintiff never voiced any safety concerns or sought protection from Dr. Meden" and "he was unaware of the potential safety concerns of Plaintiff." Def. Mot. for Summ. J. at 17-18 (Dkt. 53). "Any arguments made for the first time in objections to an R&R are deemed waived." <u>Uduko v. Cozzens</u>, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013). Dr. Meden cannot now argue for the first time that even if he was aware of any risk to Alexander, his decision to transfer Alexander was a "reasonable response to a known risk." Def. Obj. at 7. This objection is overruled.

### c. State Defendants' First Objection: Qualified Immunity

The State Defendants first object to the R&R's conclusion that Defendants Mandi Salmi, Nicholas Calzetta, and Darrin Viitala are not entitled to qualified immunity. State Def. Obj. at 2 (Dkt. 95). They argue that even if they had received a protection request from Alexander and had the authority to modify his transfer to WCC, the law was not clearly established that it was unreasonable for them to transfer him to the only facility that provided intensive mental health programming. Id. at 4.

Qualified immunity requires a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310 (6th Cir. 2005). These questions can be addressed in any order. Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Comm'rs, 870 F.3d 471, 480 (6th Cir. 2017). The plaintiff bears the burden of showing that the law was clearly established. Key v. Grayson, 179 F.3d 996, 1000 (6th Cir. 1999). The magistrate judge concluded that, because there were questions of material fact regarding Alexander's Eighth Amendment claim, and because prisoners "enjoy a clearly established right to be free from injury at the hands of other prisoners," these Defendants were not entitled to qualified immunity. See R&R at 52.

However, even resolving all of the disputed facts in Alexander's favor, there has been no showing that Salmi, Calzetta, and Viitala violated clearly established law. While it is true, as the magistrate judge stated, that prison officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners," Farmer, 511 U.S. at 833, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right[,]" Anderson v. Creighton, 483 U.S. 635, 640

9

(1987). Here, Alexander has not shown that the law was clearly established that it would have been objectively unreasonable for these State Defendants to transfer Alexander to WCC as part of his mental health treatment, even if Alexander had notified them of his safety concerns. Just as prison personnel have a duty to protect prisoners from the violent acts, they also have an obligation to attend to a prisoner's health needs, including mental health needs. See Estelle v. Gamble, 429 U.S. 97, 103 (1976); Cosgrove v. Burke, No. 16-110, 2016 WL 5859058, at *10 (W.D. Mich. Oct. 7, 2016) ("The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates."). When a mentally challenged individual, such as Alexander was reported to be, asserts a fear of assault if transferred to a facility in order to address his mental health needs, there is a clash between the two obligations – and no case clearly establishes how prison personnel should resolve that conflict and respond in such a situation. The Court agrees that the contours of the right were not clearly established such that a reasonable officer would know his conduct was unlawful. Defendants Salmi, Calzetta, and Viitala are entitled to qualified immunity on the Eighth Amendment claim.

### d. State Defendants' Second Objection: Conspiracy

The State Defendants next contend that the magistrate judge erred by recommending that Alexander's conspiracy claim under 42 U.S.C. § 1985 should proceed. State Def. Obj. at 5. They argue that only one grievance was found to have been exhausted, and the conspiracy claim was not the subject of that grievance; thus, it should be dismissed for a failure to exhaust. Id. Further, they argue that the complaint did not plead the elements of a conspiracy claim, because Alexander did not suggest that the acts against him were motivated by a class-based animus. Id.

The State Defendants did not move for summary judgment on the conspiracy claim. See R&R at 55 ("The State Defendants did not move for summary judgment on Plaintiff's . . .

conspiracy claims under 42 U.S.C. § 1985, and accordingly those claims should not be dismissed."). "Any arguments made for the first time in objections to an R&R are deemed waived." Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013). Accordingly, this objection is overruled.

### e. Alexander's First and Fourth Objections: Exhaustion

Alexander first objects to the R&R's conclusion that his grievance filed February 9, 2016 does not exhaust his remedies against the State Defendants located at WCC. Pl. Obj. at 1 (cm/ecf page) (Dkt. 97). He contends that he has always been instructed not to file a new grievance relating to issues in an already-pending grievance at Step I, but to instead add these to his Step II grievance. He further asserts that he is not required to add the names of the prison officials in every step, claiming that once they are named in a previous step, this provides sufficient notice. He also argues that the grievance policy does not "state a grievance with an ongoing issue cannot 'operate' to exhaust employees of another facility." Pl. Obj. at 2. Similarly, Alexander's fourth objection is to the magistrate judge's conclusion that he failed to exhaust the retaliation claims against the MBP employees, because his grievance filed February 12, 2016 states that "[m]ost of the above defendants refused protection based on retaliatory motive for my protected conduct." See Prisoner/Parolee Grievance Form, Ex. 6 to Pl. Resp., at 25 (cm/ecf page) (Dkt. 88). Alexander also contends that this February 12, 2016 grievance covers both the February 12 and February 3 attacks, because he wrote that he "want[s] the MDOC employees to be held liable for my injuries." See id.

The Court overrules Alexander's objections. The magistrate judge noted that one of the primary purposes of exhaustion is to afford correction officials "time and opportunity to address complaints internally before allowing the initiation of a federal case," and this purpose could not

be fulfilled as to the WCC officials if the matter was escalated at MBP. See R&R at 24-25 (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)). Alexander argues that his grievance was escalated to Step III, "which is the director's office located in Lansing[ which] is neither MBP or WCC," Pl. Obj. at 2, but the names of the WCC State Defendants were not included on the Step III appeal. Additionally, as the magistrate judge correctly noted, the WCC-based State Defendants were not responsible for the issue listed in the grievance: "The issue is that I was transferred without my consent or consideration of a known safety risk in which the above individuals [i.e., the MBP State Defendants and Dr. Meden] knew of." Prisoner/Parolee Grievance Form, Ex. 17 to Def. Mot., at 25 (cm/ecf page).

As to Alexander's fourth objection, the magistrate judge concluded that Alexander's retaliation claims do not survive summary judgment "even if [the February 3 grievance] did serve to exhaust Plaintiff's retaliation claim against the listed MBP Defendants," R&R at 39, and thus the exhaustion of the claim does not affect the outcome. This objection is overruled.

### f. Alexander's Second Objection: Responsibility of MBP-based Defendants

Second, Alexander objects to the magistrate judge's conclusion that the MBP-based Defendants cannot be held responsible for a failure to protect him at WCC; he argues that if they had provided protection to him, he would not have been assaulted twice at WCC. Pl. Obj. at 3.

The R&R concluded that Alexander's February 12, 2016 grievance – which was filed at WCC – "cannot exhaust his administrative remedies as to those employed at MBP," and that "MBP-based employees [should not] be held responsible for an alleged failure to protect Plaintiff when he was already in custody at another facility." R&R at 27. The Court agrees. As the magistrate judge reasoned, escalating Alexander's grievance at WCC "would not serve the purpose of providing officials at [MBP] a full and fair opportunity to address complaints regarding the

people employed at their site, and thus would thwart the purpose of exhaustion[.]" R&R at 25. Additionally, it does not make sense to hold the MBP-based State Defendants responsible for an incident that occurred at an entirely different facility, after Alexander had allegedly requested protection at that facility and suffered an attack there. Even if the MBP-based State Defendants were responsible for Alexander's transfer to WCC, at some point their responsibility for his safety must end. Alexander's objection is overruled.

### g. Alexander's Third Objection: Dismissal of Johnson

Next, Alexander objects to the dismissal of Defendant Daphne Johnson. Pl. Obj. at 3. He argues that Johnson was personally involved "because she had a high position to intervene issues at prisons and became aware of a safety risk to Plaintiff and failed to act completely." Id. However, the magistrate judge correctly concluded that a supervisor's mere failure to act cannot impose liability under 42 U.S.C. § 1983. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (defendants could not be held liable under § 1983 where their "only roles in this action involve the denial of administrative grievances or the failure to act"). This objection is overruled.

### h. Alexander's Sixth Objection:[1] Personal Involvement of Defendants

Alexander objects to the recommendation that Defendants Govern, Giesen, LaCount, Huss, and Niemisto be dismissed for a lack of personal involvement. He argues that "[t]he failure to provide protection and/or report the safety risk, which led to the assaults, is [the] unconstitutional conduct. Not just the transfer to WCC." Pl. Obj. at 5 (emphasis and second alteration in original).

---

[1] Alexander includes a heading for a fifth objection, see Pl. Obj. at 4, but then only includes one line of text before providing a new heading of "Objection #6," id. at 5. Alexander also raises a similar argument regarding the personal involvement of these defendants on page 7 of his objections, but the heading to this objection is cut off at the top of the page. The Court will view all of these arguments as one objection.

13

This objection is overruled. The magistrate judge correctly concluded that although Alexander alleged other instances of the MBP State Defendants' failures to protect him, (i) Alexander did not grieve these alleged denials of protections, and those claims therefore are not exhausted; and (ii) Alexander suffered no physical injury as a result of these denials, and therefore he cannot recover for a claim based on these denials. R&R at 33. Alexander does not explain how a failure to provide protection at MBP could have "led to" his assaults at WCC, other than through the decision to transfer.

### i. Alexander's Seventh Objection: Retaliation claims

Next, Alexander objects to the magistrate judge's conclusion that his retaliation claims fail as a matter of law. He first states that the magistrate judge "overlooked the fact that Plaintiff raised his retaliation claims in grievance cited in exhibit 6"; that is, in his grievance filed February 12, 2016. Pl. Obj. at 5. Presumably, this is a response to the magistrate judge's statement that the February 3 grievance "does not allege or even mention retaliation." See R&R at 39. However, regardless of whether he exhausted his retaliation claims against the MBP-based State Defendants through the February 12 grievance, the claims fail as a matter of law, as explained below.

Alexander also disagrees with the magistrate judge's conclusion that the assaults on Alexander were not an adverse action, and that Alexander failed to demonstrate that the attacks were a foreseeable negative consequence to his transfer. Pl. Obj. at 5-6. To state a claim for retaliation under the First Amendment, a plaintiff must show: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). In his

14

response to the motion for summary judgment, Alexander argued that his "adverse action suffered in response to his perpetual protected activity was the 2 assaults he endured by Defendants' deliberate indifference." Pl. Resp. to Mot. at 14 (Dkt. 84). However, as pointed out by the magistrate judge, Defendants Calzetta, Govern, Giesen, Viitala, and Salmi did not commit these assaults. Alexander also fails to explain how any of the actions taken by these Defendants resulted in his two assaults. Alexander claims only that they failed to protect him, but does not explain what they could have done to prevent the assaults from occurring. He does not actually show that any of these individuals were responsible for his transfer to WCC, where the assaults allegedly occurred, nor does he establish that any of these individuals had the power to prevent him from being transferred there. All that Alexander claims that these individuals have done is to fail to "report/intervene the serious safety risk." See Pl. Aff., Ex. 36 to Pl. Resp., at ¶¶ 18-19 (Dkt. 88-1). This is insufficient to show an adverse action.

Additionally, Alexander fails to show that any adverse action was motivated by his protected conduct. Alexander largely makes conclusory allegations of retaliatory motive without offering factual support. As the magistrate judge noted, "'[c]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient' to state a claim. See R&R at 42 (citing Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005)). The one possible exception is with respect to Defendant Viitala, whom Alexander claims to have informed of his safety concerns in January 2016. See Pl. Aff. ¶ 19. Alexander alleges that Viitala responded, "Your [sic] beefing with Govern," which referred to "conflict from filed grievances on [Defendant] Fred Govern," Compl. ¶ 53D, and walked away. Pl. Aff. ¶ 19. However, as discussed, Alexander has not shown that Viitala had any role in his transfer to the facility where he was allegedly assaulted, or had any ability to take action to prevent such transfer. His objection is overruled.

### j. Alexander's Eighth Objection: Medical Malpractice

Alexander's eighth objection is that the magistrate judge erred in concluding that his state law claims against Dr. Meden were subject to the prerequisites of bringing a medical malpractice claim. He contends that he is not suing Dr. Meden for an error in medical judgment, but rather for a negligent action or omission in failing to act on a known safety risk. Alexander also states that he did file a notice of intent to sue. Pl. Obj. at 6.

A claim sounds in medical malpractice when the claim (i) occurs within the course of a professional relationship; and (ii) necessarily raises questions involving medical judgment. Bryant v. Oakpoint Villa Nursing Centre, 684 N.W.2d 864, 871 (Mich. 2004). Here, the claim arose within the course of a professional relationship. Alexander claims that he raised his safety concerns to Dr. Meden on January 26, 2016 when Dr. Meden offered to transfer him to WCC, Compl. ¶ 30, and Dr. Meden has presented treatment notes from that date that describe their discussion of transfer to WCC and Alexander's safety concerns, see Def. Ex. 2 at 2 (noting that Alexander was "resistant to our recommendations of WCC placement, due to paranoia and unfamiliarity with that setting," but that Dr. Meden "was able to get his agreement with WCC placement"). The claim also necessarily raises questions involving medical judgment, because Dr. Meden believed the transfer to WCC to be the best course of treatment for Alexander's mental health issues. Thus, this is not a case where "the reasonableness of the health care professional['s] action can be evaluated by lay jurors[.]" Bryant, 684 N.W. at 872. The case, therefore, sounds in medical malpractice, and Alexander was subject to the prerequisites of filing a medical malpractice claim. And although Alexander states that he filed a notice of intent to sue, the magistrate judge stated that he would not address the issue of whether Alexander filed such notice. See R&R at 47

n. 6. Instead, the magistrate judge found that Alexander "did not include an affidavit of merit signed by a health professional," R&R at 47, a finding to which Alexander has not objected.

Additionally, the magistrate judge found that even if the state law claims for gross negligence and IIED did not sound in medical malpractice, Dr. Meden is still entitled to summary judgment on those claims. See R&R at 47. Alexander's objection is overruled.

### k. Alexander's Ninth Objection: Equal Protection

Finally, Alexander objects to the magistrate judge's conclusion that he did not establish that he belonged to a protected class, as Alexander is "mentally ill/mentally disabled." Pl. Obj. at 6. Alexander already argued as much to the magistrate judge, who noted that "persons with physical or mental disabilities are not part of a suspect class under the Equal Protection Clause." R&R at 50 (citing City of Cleburne v. Cleburne Living Ctr, Inc., 473 U.S. 432, 442 (1985)). As it "is well established that disability does not constitute a suspect or quasi-suspect class under the Equal Protection Clause," Gwilliams v. Michigan Parole Bd., No. 17-266, 2017 WL 1243225, at *6 (W.D. Mich. Apr. 5, 2017), Alexander's objection is overruled.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts in part and rejects in part the Report and Recommendation (Dkt. 93); overrules Dr. Meden's objections (Dkt. 96); sustains in part and overrules in part the State Defendants' objections (Dkt. 95); overrules Alexander's objections (Dkt. 97); grants in part and denies in part Dr. Meden's motion for summary judgment (Dkt. 53); and grants in part and denies in part the State Defendants' motion for summary judgment (Dkt. 46). Going forward, the following claims remain:

- Eighth Amendment claims against the WCC-based State Defendants and Dr. Meden;
- Retaliation claims against certain WCC-based State Defendants;

- Conspiracy claim under 42 U.S.C. § 1985 against certain MBP-based State Defendants; and

- State-law claims for gross negligence, negligence, and IIED against the State Defendants.

SO ORDERED.

Dated: March 30, 2018  s/Mark A. Goldsmith
 Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2018.

 s/Karri Sandusky
 Case Manager