UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE ALEXANDER,

              Plaintiff

v.

NICHOLAS CALZETTA,
FRED GOVERN, ERICA
HUSS, DARRIN VIITALA,
MANDI SALMI, KENNETH
NIEMISTO, KRISTINE
GIESEN, TERRY MEDEN,
CHAD LaCOUNT, HANNA
SAAD, DR. ROSEN, C/O
WATKINS, C/O LEWIS, C/O
LEE, C/O SLAUGHTER, C/O
HOUSTON, DAPHNE M.
JOHNSON and RICHARD
IDEMUDIA

              Defendants.

_____/

Case No. 2:16-CV-13293
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO (1) GRANT STATE
DEFENDANTS' MOTION TO DISMISS 42 U.S.C. § 1985 CONSPIRACY
CLAIMS AND STATE LAW CLAIMS (DE 107), (2) GRANT DEFENDANT
TERRY MEDEN, M.D.'S SECOND MOTION FOR SUMMARY
JUDGMENT (DE 116), (3) GRANT DEFENDANT HANNAH SAAD, M.D.'S
MOTION TO DISMISS/SUMMARY JUDGMENT BEING FILED IN LIEU
OF ANSWERING PLAINTIFF'S COMPLAINT (DEs 141, 146), AND (4)
*SUA SPONTE* DISMISS PLAINTIFF'S EIGHTH AMENDMENT CLAIM
AGAINST DEREK ROSEN FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES**

I.    **RECOMMENDATION**:  The Court should grant the State Defendants'

motion to dismiss 42 U.S.C. § 1985 conspiracy claims and state law claims (DE

107), grant Defendant Terry Meden, M.D.'s second motion for summary judgment

(DE 116), and grant Defendant Hannah Saad, M.D.'s motion to dismiss/summary

judgment (DEs 141, 146).  The Court should also, *sua sponte*, dismiss Plaintiff's

Eighth Amendment claim against Defendant Derek Rosen for failure to exhaust

administrative remedies.

II.   **REPORT**

    **A.    Background**

        **1.    Factual background**

Plaintiff D'Andre Alexander (#731077) is currently incarcerated at the

Michigan Department of Corrections (MDOC) Macomb Correctional Facility

(MRF) in New Haven, Michigan.  *See* www.michigan.gov/corrections, "Offender

Search."  On September 8, 2016, while incarcerated at MRF, Plaintiff filed the

instant lawsuit against eighteen (18) defendants, who are described as follows:

- **nine (9) Defendants** are associated with the MDOC's Marquette Branch Prison (**MBP**) (Nicholas Calzetta, Fred Govern, Kristine Giesen, Darrin Viitala, Chad LaCount, Kenneth Niemisto, Erica Huss, Mandi Salmi and Terry Meden), which is located in Michigan's upper peninsula,

- **eight (8) Defendants** are associated with the MDOC's Woodland Center Correctional Facility (**WCC**) (Hanna Saad, Derek Rosen, Melvin Watkins, John Lewis, Rodney Lee, Kyle

Slaughter, Bobby Houston and Richard Idemudia), which is located in Whitmore Lake, Michigan, and

- **one (1) Defendant** is associated with the **MDOC's Office of Legal Affairs** (Daphne Johnson).

(DE 1 at ¶¶ 5-12.) The facts underlying his complaint span the period from February 2, 2015, when Plaintiff was incarcerated at MBP, through February 2016, when Plaintiff was incarcerated at WCC. (DE 1 at ¶¶ 4, 13-48.)

The factual and procedural background has been extensively set forth in my prior reports and recommendations in this matter and need not be repeated in full here. In brief summary, Plaintiff alleges that he was involved in a fight on February 2, 2015, while incarcerated in the MBP, and taken into segregation. While in segregation, Plaintiff alleges that MBP staff intentionally allowed for his flatscreen television to be stolen in retaliation for filing grievances and a lawsuit (filed on January 23, 2015). After he was released from segregation and learned who had stolen his television, he alleges that he notified an officer and that he was then labeled a "snitch," a hit was ordered, and he was targeted by fellow prisoners. Plaintiff alleges that his multiple requests for protection to MBP officials between May 2015 through January 2016 went unheeded.

During this time period, Plaintiff claims that he asked his doctor at MBP, Dr. Terry Meden, to place him in F-block, and that, after undergoing a psychiatric evaluation, he was placed on the waitlist for transfer to an Interim Care Program

3

(ICP).  Plaintiff was eventually placed in the F-block ICP from August 11, 2015

through December 24, 2015, at which time he was placed back into segregation

due to a threatening behavior misconduct.  (*Id.* at ¶¶ 13-27.)  The State Defendants[1]

and Dr. Meden either deny that Plaintiff asked for protection or do not recall him

requesting such protection.  (DEs 46-2 – 46-16; DE 116 at 17; DE 117-3

(SEALED).)

On January 27, 2016, Plaintiff was informed he would be transferred to WCC.

Plaintiff alleges that at his first treatment team meeting after his transfer, he informed

WCC staff about the hit placed on him and that he feared for his safety.  On February

3, 2016, he alleges that a fellow prisoner heard him speaking to another prisoner

about the hit on him, and that the prisoner announced himself as a member of the

gang that put the hit on Plaintiff and then attacked him.  Plaintiff alleges that he

expressed his safety concerns to Defendants Saad, Rosen, Watkins, Lewis and Lee,

but they refused to accommodate his needs.  (DE 1, ¶¶ 31-37.)  On February 9, 2016,

Plaintiff filed a grievance against MBP Defendants complaining that he "was

transferred without [his] consent or consideration of a known safety risk" and that

he was subsequently assaulted at WCC.  (DE 84 at 9, citing DE 88 at 3.)  Plaintiff

---

[1] Defendants' motion identifies the "State Defendants" as Defendants Nicholas
Calzetta, Fred Govern, Erica Huss, Darrin Viitala, Mandi Salmi, Kenneth
Niemisto, Kristine Giesen, Chad LaCount, Melvin Watkins, John Lewis, Rodney
Lee, Kyle Slaughter, Bobby Houston, Daphne Johnson, and Richard Idemudia.
(DE 107 at 2.)

alleges that he was assaulted again on February 12, 2016 by a different prisoner and that he sought protection from WCC State Defendants Slaughter and Houston, but they refused to act. (DE 1, ¶¶ 41-42.) That same day, Plaintiff states that he filed a grievance against MBP and WCC State Defendants. (DE 84 at 13-14, citing DE 88 at 25.)

### 2. Prior procedural history

### a. Prior dispositive motions

The State Defendants filed a motion for summary judgment on June 27, 2017 (DE 46); and (2) Defendant Terry Meden, M.D., filed a motion for summary judgement on July 11, 2017 (DEs 53, 54 (SEALED)). On April 3, 2018, the Court entered an Amended Opinion and Order adopting in part my Report and Recommendation (DE 93), granting in part and denying in part the State Defendants' motion for summary judgment, and granting in part and denying in part Defendant Meden's motion for summary judgment. (DE 103.)[2] That Amended Opinion and Order explained that "the following claims are dismissed:

- Eighth Amendment claims against Defendants Calzetta, Govern, Huss, Viitala, Salmi, Niemisto, Giesen, LaCount, and Johnson;

---

[2] This Opinion and Order amended the Opinion and Order issued on March 30, 2018 (DE 102), to clarify which claims have been dismissed and to modify the language regarding Plaintiff's third objection. (DE 103 at n.1.)

- Alexander's claims for money damages against Defendants Calzetta, Govern, Giesen, Viitala, LaCount, Niemisto, Huss, and Johnson in their official capacity;

- Equal protection claims against all Defendants;

- Retaliation claims against Defendants Calzetta, Govern, Viitala, Salmi, and Giesen; and

- Negligence, IIED, and gross negligence claims against Dr. Meden.

Going forward, the following claims remain:

- Eighth Amendment claims against the WCC-based State Defendants and Dr. Meden;

- Retaliation claims against certain WCC-based State Defendants (Slaughter and Idemudia);

- Conspiracy claims under 42 U.S.C. § 1985 against certain MBP-based State Defendants (Calzetta, Govern, Huss, Viitala, Salmi, Niemisto, Giesen, and LaCount) and certain WCC-based State Defendants (Slaughter and Houston); and

- State law claims for gross negligence, negligence, and IIED against all State Defendants."

(DE 103 at 18.)

### b.    Defendants Saad and Rosen are served

After several attempts at service, Defendants Derek T. Rosen and Hannah Saad, M.D. and were at last successfully served and separate counsel entered an appearance for these two defendants on May 24, 2018, and July 31, 2018, respectfully.  (DEs 121, 137.)  Defendant Rosen filed an answer and has pleaded

the failure to exhaust his administrative remedies (through the grievance process) as an affirmative defense, but has not otherwise filed a dispositive motion or joined in a pending motion. (DE 159.) Dr. Saad has filed a motion to dismiss/summary judgment (DEs 141, 146), as discussed further below.

### c. September 12, 2018 evidentiary hearing

In ruling on the State Defendants' motion for summary judgment, this Court found that there was a question of fact as to whether the February 12, 2016 grievance filed at WCC (the "Disputed Grievance") exhausted Plaintiff's Eighth Amendment and retaliation claims against the WCC State Defendants, (DE 93 at 27, 39 n.5, 53, 55; DE 103 at 4), and so conducted an evidentiary hearing on September 12, 2018 to address that issue. (DEs 125, 158.) I subsequently issued a report and recommendation finding that Plaintiff failed to exhaust his administrative remedies regarding his failure to protect and retaliation claims against the WCC State Defendants (Watkins, Lewis, Lee, Slaughter, Houston and Idemudia), and that those defendants therefore were entitled to summary judgment on those claims. (DE 168.)

Accordingly, the only remaining claims are:

- Eighth Amendment failure to protect claims against Dr. Meden, Dr. Saad and Rosen;

- Conspiracy claims under 42 U.S.C. § 1985 against certain MBP-based State Defendants (Calzetta, Govern, Huss, Viitala, Salmi, Niemisto,

7

Giesen, and LaCount) and certain WCC-based State Defendants (Slaughter and Houston); and

- State law claims for gross negligence, negligence, and IIED against all State Defendants and Defendants Saad and Rosen.

### 3. Instant motions

#### a. State Defendants' motion to dismiss 42 U.S.C. § 1985 conspiracy claims and state law claims

On April 10, 2018, the State Defendants filed, with leave of Court, a motion to dismiss Plaintiff's 42 U.S.C. § 1985 conspiracy claims and state law claims. (DE 107.) The State Defendants argue that Plaintiff has failed to state a conspiracy claim against them, and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (*Id.*)

Plaintiff responded, opposing the motion and arguing that he has stated a conspiracy claim under 42 U.S.C. § 1985 or 42 U.S.C. § 1983, and that the Court should retain supplemental jurisdiction over his state law claims because he asserts that his Eighth Amendment and retaliation claims remain pending against certain defendants. (DEs 109, 113.)

#### b. Defendant Hannah Saad, M.D.'s motion to dismiss/summary judgment

On August 17, 2018, Dr. Saad filed a motion to dismiss/summary judgment in lieu of answering Plaintiff's complaint (DEs 141, 142), and on August 27, 2018 filed an amended motion to dismiss/summary judgment, in compliance with the

Court's order regarding the sealing of exhibits (DEs 146, 147.)  Dr. Saad argues that Plaintiff's Eighth Amendment failure to protect claim fails because Plaintiff failed to exhaust his administrative remedies and because Plaintiff has failed to establish that Dr. Saad knew of and disregarded a risk to his health or establish an objectively serious medical need.  (*Id.*)  Dr. Saad also argues that Plaintiff's state law claims against him fail as a matter of law.  (*Id.*)

Plaintiff filed a response in opposition to Dr. Saad's motion, asserting that he has successfully exhausted his available administrative remedies against Dr. Saad, that Dr. Saad failed to properly address Plaintiff's failure to protect claims and that he has successfully stated a claim of deliberate indifference against Dr. Saad.  (DE 150.)  Plaintiff further contends that he has properly asserted claims of negligence and intentional infliction of emotional distress against Dr. Saad for failure to protect him.  (*Id.*)

Dr. Saad argued in reply that Plaintiff failed to properly exhaust his claims, that Plaintiff's Eighth Amendment claim against him is based on the physician-patient relationship between Dr. Saad and Plaintiff and is improperly asking this Court to "second guess medical judgment," and that Plaintiff's state law claims fail to state a valid claim against a medical professional pursuant to MCL 600.2912, *et seq.*  (DE 152.)

### c.    Defendant Terry Meden, M.D.'s second motion for summary judgment

On May 7, 2018, Dr. Meden filed, with leave of Court, a second motion for summary judgment to address Plaintiff's Eighth Amendment claim against him, arguing that he is entitled to summary judgment because Plaintiff has not established that Dr. Meden knew of and disregarded a risk to Plaintiff's health and that he has failed to establish an objectively serious medical need.  (DE 116.)

Plaintiff responded to Dr. Meden's motion on May 16, 2018, disputing that he "voluntarily consented to be transferred to WCC" and seeking to incorporate the arguments made in his prior response brief in opposition to Dr. Meden's first motion for summary judgment.  (DE 120.)

Dr. Meden filed a reply brief, arguing that Plaintiff asserts only conclusory and unsupported allegations in opposition to his motion, and that Plaintiff's desire for different treatment does not support an Eighth Amendment claim.  (DE 122.)

## B.    Standards

### 1.    Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[3]

### 2.   Summary judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

## C. Discussion

### 1. Defendant Saad is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him based on failure to exhaust administrative remedies

#### a. Exhaustion under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones*, 549 U.S. at 203. Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her]

15

administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017). Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b. Grievance Procedures at the MDOC

Pursuant to its Policy Directive 03.02.130, dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve any issue with the staff member involved within two business days of becoming aware of a grievable issue. (DE 16-2, ¶P.) If the issues are not resolved within five business days, the inmate may file a Step I grievance

using the appropriate form.  (*Id.*)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶R.)  The inmate should receive a response within fifteen business days of filing the grievance.  (*Id.* at ¶X.)

If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (*Id.* at ¶ BB.)  As with Step I, a response to the Step II grievance should be issued within fifteen business days.  (*Id.* at ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the response was due, he or she may file a Step III grievance.  (*Id.* at ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c.   Plaintiff failed to exhaust his administrative remedies as to his failure to protect claim against Dr. Saad

Plaintiff asserts an Eighth Amendment failure to protect claim against Dr. Saad, claiming that he told Dr. Saad and the WCC State Defendants that he was in fear for his safety and requested protection, but that they "refused to accommodate this need" and he was subsequently attacked while housed at WCC.  (DE 1, ¶¶ 32-

17

35.)  Plaintiff claims that he exhausted his administrative remedies against all Defendants via Grievance No. MBP-16-02-0363-17i, and that he further attempted "to exhaust by filing another grievance on all defendants again … [but] never received a response from that grievance."  (*Id.* ¶¶ 49, 51.)

Dr. Saad argues that Plaintiff has failed to exhaust his administrative remedies as to his Eighth Amendment claim against him because he did not pursue any grievances relating to the allegations against him, or the WCC State Defendants, to Step III of the grievance process.  (DE 146 at 20-22.) This Court has already held that Grievance No. MBP-16-02-0363-17i does not exhaust Plaintiff's administrative remedies against the WCC State Defendants.  (DE 93 at 24-25; DE 103 at 12.)  Plaintiff instead asserts in response to the instant motion that "this [exhaustion] issue which includes Defendant Saad is scheduled to be resolved via an evidentiary hearing 9/12/2018."  (DE 150 at 6 (emphasis in original).

As explained *supra*, I recently found, following the September 12, 2018 evidentiary hearing, that the February 12, 2016 Disputed Grievance failed to exhaust Plaintiff's failure to protect and retaliation claims against the WCC State Defendants, because he failed to pursue the grievance through Step III of the grievance process or otherwise demonstrate that the grievance process was unavailable to him, and that those defendants were therefore entitled to summary

18

judgment on Plaintiff's constitutional claims against them.  (DE 168.)

Specifically, I found that Plaintiff did not present any credible evidence that the

Disputed Grievance had been submitted to the WCC grievance coordinator and

that Plaintiff testified about his practice of keeping a stack of grievances in his

possession and thus he could have drafted the Disputed Grievance at any time.  (*Id.*

at 22-25.)  Further, Plaintiff did not keep a copy of the kite he claims he submitted

when he did not receive a response to the Disputed Grievance, contrary to his usual

practice to keep all copies, and, that despite his having attested to long-standing

familiarity with the MDOC grievance policy, he did not attempt to pursue the

Disputed Grievance to Step II or Step III of the grievance process or otherwise

pursue a response to the grievance.  (*Id.* at 25-29.)  <u>In addition, testimony at the</u>

<u>hearing established that the Disputed Grievance does not indicate when Dr. Saad</u>

<u>would even have been informed of the alleged second assault at issue in the</u>

<u>grievance. (DE 158 at 24, 46.)</u>  For these same reasons, the February 12, 2016

Disputed Grievance fails to exhaust Plaintiff's failure to protect claim against Dr.

Saad, and Dr. Saad is entitled to summary judgment on Plaintiff's Eighth

Amendment claim against him.

> **2.     Defendant Rosen is also entitled to summary judgment on Plaintiff's Eighth Amendment claim**

Plaintiff also asserts a similar Eighth Amendment failure to protect claim

against Defendant Rosen, claiming that he told Rosen, Saad and the WCC State

Defendants that he was in fear for his safety and requested protection, but that they "refused to accommodate this need" and he was subsequently attacked while housed at WCC.  (DE 1, ¶¶ 32-35.)

Defendant Rosen has not filed a motion for summary judgment or motion to dismiss in this case.  Nevertheless, I note that Plaintiff claims that he exhausted his failure to protect claims against all WCC-based defendants, including Rosen, by the same Disputed Grievance.  (DE 1, ¶ 51; *id.* at 21.) Thus, in the interest of judicial efficiency I will address Plaintiff's Eighth Amendment claim against Rosen, and find that, for the same reasons the February 12, 2016 Disputed Grievance fails to exhaust Plaintiff's constitutional claims against the WCC State Defendants (DE 168) and Dr. Saad, that grievance would also fail to exhaust Plaintiff's Eighth Amendment claim against Rosen, and Rosen therefore should be entitled to summary judgment on this claim.

### 3. Plaintiff's 42 U.S.C. § 1985 conspiracy claims against the WCC State Defendants should be dismissed

#### a. 42 U.S.C. § 1985(3)

Plaintiff alleges a claim against Defendants Calzetta, Govern, Giesen, Viitala, Salmi, Huss, Niemisto, LaCount, Slaughter and Houston for conspiracy pursuant to 42 U.S.C. § 1985.  (DE 1, ¶¶ 54, 56.)  "Section 1985 creates a cause of action when an underlying civil rights violation is the result of a conspiracy." *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339 (6th Cir. 2014).  As an

initial matter, the Court notes that § 1985 has three subsections: (1) preventing

officer from performing duties; (2) obstructing justice; intimidating party, witness,

or juror; and (3) depriving persons of rights or privileges.  The Court presumes that

Plaintiff intended to proceed under § 1985(3) because Plaintiff alleges that

defendants conspired "to intentionally deprive Plaintiff's right" and "to

intentionally deprive Plaintiff of his constitutionally protected rights[.]" (DE 1, ¶¶

54, 56.)  The State Defendants argue that Plaintiff has failed to state a claim against

them under 42 U.S.C. § 1985.  (DE 107 at 8-10.)

To establish a violation of § 1985(3), Plaintiff is required to show: "(1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges

or immunities of the law; (3) an act in furtherance of the conspiracy; (4) whereby a

person is either injured in his person or deprived of any right or privilege of a

citizen of the United States."  *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)

(quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S.

825, 828-29 (1983)).  Plaintiff must demonstrate that the conspiracy was motivated

by a class-based discriminatory animus, such as race.  *Smith v. Thornburg*, 136

F.3d 1070, 1078 (6th Cir. 1998); *see also Center for Bio-Ethical Reform, Inc. v.

City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (an essential element of §

1985(3) is "some class-based discriminatory animus behind the conspirator's

21

action").  And, there must be a predicate constitutional violation to support a claim of conspiracy under 42 U.S.C. § 1985.  *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991).

Plaintiff's complaint contains allegations occurring over a period of time at two different correctional facilities and involving a number of individual officers and physicians, but does not provide any allegations establishing a link between the alleged conspirators or any agreement between them.  (DE 1, ¶¶ 13-48.) Plaintiff alleges that defendants: "mentioned complaints filed against themselves and their co-defendants and even discussed the serious safety risk together and still refused to act;" "they all intentionally refused to act because of complaints filed against them and their co-workers at MBP;" "their intentional disregard was in uniformity with their co-defendants;" and, they conspired "to intentionally deprive Plaintiff of his constitutionally protected rights."   (DE 1, ¶¶ 54, 56.)  These vague and conclusory allegations fail to sufficiently allege that the defendants acted in concert or had the requisite single plan, and thus are not sufficient to satisfactorily plead a § 1985 claim.  *See Bishawi*, 628 F. App'x at 346 (plaintiff's allegations that the "'defendants falsified reports, misrepresented facts, filed false charges, harassed, attempted to intimidate, oppress [sic], threatened, implied illegal procedures, illegal actions, misconducts, discriminated, and negligence and/or rekless [sic] disregard for the truth … etc.'" failed to satisfactorily plead a

22

§1985(3) claim) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003));

*see also Center for Bio-Ethical Reform*, 477 F.3d at 832 (dismissing § 1985(3)

claim because "Plaintiffs' complaint does not set forth specific allegations

supporting their conspiracy claim, but rather vaguely asserts that Defendants

'conspired.'").

Further, as Defendants point out with respect to the second element, Plaintiff

has failed to plead anything that comes close to resembling class-based

discriminatory animus.  (DE 107 at 8-9.)  *See Center for Bio-Ethical Reform, Inc.*,

477 F.3d at 832 (noting "Plaintiffs here do not allege that Defendants acted with

discriminatory animus based on a constitutionally protected *classification*.")

(emphasis in original citing *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982)).

Plaintiff contends in response that "he is a member of the disabled mentally" class

and "entitled to privileges and immunities under the law."  (DE 109 at 2.)

However, as this Court has already found in this case, "persons with physical or

mental disabilities are not part of a suspect class under the Equal Protection

Clause" (DE 93 at 50; DE 103 at 17), and Plaintiff has failed to allege how this

purported discriminatory animus was the basis for Defendants' actions.

Accordingly, Plaintiff fails to satisfactorily allege this second element of his §

1985(3) claim.

Moreover, with respect to the fourth element, Plaintiff's conspiracy claim fails because the underlying claims against the State Defendants upon which Plaintiff's conspiracy allegations are based have been or should be dismissed. (See DE 103 at 18; DE 168 at 29-30.) *See Beztak Land Co. v. City of Detroit*, 298 F.3d 559, 568-69 (6th Cir. 2002) (where the substantive allegations that form the basis of a conspiracy claim are properly dismissed, the conspiracy count fails). Accordingly, Plaintiff's 42 U.S.C. § 1985 conspiracy claims should be dismissed.

### b. 42 U.S.C. § 1983: "agreement," "plan" and particularity requirements

Plaintiff also contends in response to the State Defendants' motion that, as a *pro se* plaintiff, the Court should construe his pleadings liberally and construe his conspiracy claims as a claim under 42 U.S.C. § 1983 instead of § 1985, even though he did not plead a § 1983 conspiracy claim. (DE 109 at 2-3.) However, even construing Plaintiff's claim as a claim under 42 U.S.C. § 1983, that claim would fail.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). "The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff." *Alexander v. Salmi*, No. 2:16-cv-

24

96, 2017 WL 950951, at *2 (W.D. Mich. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 915393 (W.D. Mich. Mar. 8, 2017).[4] Whether proceeding under 42 U.S.C. § 1985 or for civil conspiracy under § 1983, Plaintiff must plead a conspiracy with particularity and show some evidence of coordinated actions between the alleged conspirators.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestions of conspiracy," not merely a "possible" one); *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).  Conclusory or vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. §§ 1983 or 1985.  *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.") (citation omitted).

     As discussed above, Plaintiff's complaint does not provide any allegations establishing a link between the alleged conspirators or any agreement between them—in other words, only conclusory and vague allegations wholly insufficient to satisfactorily plead a § 1983 or § 1985 claim.  *See Alexander*, 2017 WL 950951 at *3 (dismissing § 1983 conspiracy claim asserted by Plaintiff's D'Andre

---

[4] I note that this case was also brought by Plaintiff D'Andre Alexander.

Alexander because plaintiff's allegations "describ[ing] a number of discrete facts

that occurred over a period of time involving numerous individual officers" but

"provid[ing] no allegations establishing a link between the alleged coconspirators

or any agreement between them" are "conclusory and speculative"); *see also*

*Sadler v. Michigan Dept. of Corr.*, No. 09-11375, 2011 WL 2462028, at *9 (E.D.

Mich. Apr. 21, 2011) (dismissing conspiracy claim because plaintiff's allegations

are at best tenuous and thus conclusory and insufficient to establish a meeting of

the minds) (citing *Naguib v. Illinois Dept. of Professional Regulation*, 986 F. Supp.

1082, 1092 (N.D. Ill. 1997); *Pollack v. Nash*, 58 F.Supp.2d 294, 299-300

(S.D.N.Y. 1999)), *report and recommendation adopted*, 2011 WL 2448004 (E.D.

Mich. June 16, 2011).  Therefore, Plaintiff's conspiracy claims should be

dismissed, whether pleaded under 42 U.S.C. § 1985(3) or § 1983.

> **4.    The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims against the State Defendants, Dr. Saad and Rosen**

The State Defendants argue that this Court should decline to exercise

supplemental jurisdiction over Plaintiff's state law claims against the MBP-based

State Defendants because it has dismissed all federal constitutional claims against

those Defendants and should dismiss Plaintiff's 42 U.S.C. § 1985 claims against all

State Defendants.  (DE 107 at 10-11.)  In addition, I have found that the WCC-based

State Defendants are entitled to summary judgment on Plaintiff's constitutional

claims against them based on Plaintiff's failure to exhaust administrative remedies (DE 168 at 29-30), and I suggest in this report and recommendation that Defendants Saad and Rosen are similarly entitled to summary judgment on Plaintiff's Eighth Amendment claims against them for failure to exhaust. *See supra.*

Because Defendants are entitled to summary judgment on all of Plaintiff's federal causes of action against them, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims against these defendants under 28 U.S.C. § 1367(c)(3), and should dismiss these claims without prejudice to Plaintiff refiling these claims in state court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966); *see also Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]").

### 5.     Plaintiff's Eighth Amendment claims against Dr. Meden

Plaintiff alleges a claim against Dr. Meden for failure to protect him in violation of his Eighth Amendment rights.  (DE 1, ¶ 52.)  This Court previously found that the only claim Plaintiff has exhausted against Dr. Meden is his claim regarding his January 27, 2016 transfer from MBP to WCC.  (DE 93 at 33; DE 103 at 18.)  Dr. Meden argues that he did not act deliberately indifferent towards Plaintiff's serious medical needs when he used his medical judgment to transfer

Plaintiff to WCC for mental health treatment, and thus Plaintiff has failed to establish an Eighth Amendment violation.  (DE 116.)

### a.    Standard

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care).  The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment based on a failure to protect.  First, "the deprivation alleged must be, objectively, 'sufficiently serious[.]'"  *Farmer*, 511 U.S. at 834.  That is, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm."  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833).  Second, the inmate must show that the prison official had "a sufficiently culpable state of mind," meaning that the defendant must be deliberately indifferent to prisoner health or safety.  *Farmer*, 511 U.S. at 834.  On the continuum of conduct, deliberate indifference is something greater than mere negligence and less than purposeful or knowing conduct—it is the "equivalent of recklessly disregarding" a serious risk of harm to the prisoner.  *Id.* at 836.  The test is a subjective one which requires proof that the

28

prison official "acted or failed to act despite [his or her] knowledge of a substantial risk of serious harm." *Id.* at 842.  Deliberate indifference is not a "should have known" standard. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) ("It is insufficient for a plaintiff to allege that there existed a danger that an officer should have been aware of.").

Similarly, treatment of a prisoner violates the Eighth Amendment when it constitutes "deliberate indifference to [the] prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farmer*, 511 U.S. at 897. As with a claim for failure to protect, to make a claim for deliberate indifference to serious medical needs, a plaintiff must show that the defendant was aware of a serious risk and disregarded it. *Farmer*, 511 U.S. at 837.  Accordingly, "deliberate indifference" in medical treatment, prison conditions, and failure to protect claims means that the official actually knew of "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Therefore, to establish a violation of his Eighth Amendment right, Plaintiff must show that Dr. Meden was deliberately indifferent to his risk of harm. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990).

**b.**      **Plaintiff's allegations regarding Dr. Meden**

According to Plaintiff's complaint, on July 6, 2015, Dr. Meden treated

Plaintiff and offered to have him appealed out of segregation and sent to MBP's G-

block, where there was a Secure Status Outpatient Treatment Program (SSOTP).

(DE 1, ¶ 24.)  Plaintiff contends that he responded that he could not be placed in

the general population, because of the there was a "hit" placed on him, and he

asked to be placed in F-block, where there would be "no physical contact with

prisoners." (*Id.* ¶ 25.)  Plaintiff states that Meden agreed and had Plaintiff "signed

up for ICP placement in F-block." (*Id.* ¶ 26.)  Dr. Meden conducted a psychiatric

evaluation of Plaintiff the next day, July 7, 2015, diagnosed Plaintiff with Brief

Psychotic Disorder, Polysubstance Dependence, Antisocial Personality Disorder

and history of noncompliance, and placed Plaintiff on a waitlist for transfer to an

Interim Care Program (ICP) that could better treat his psychiatric needs. (DE 117-

3, ¶ 3 (SEALED).)  Dr. Meden explained in a sworn affidavit that "ICP is a special

housing unit for mentally ill prisoners but in general [it] does not have the

advanced treatment which [Plaintiff] eventually required." (*Id.*)

Plaintiff was placed in the F-Block ICP from August 11, 2015 through

December 24, 2015, when he was placed back in segregation due to a threatening

behavior misconduct. (DE 1, ¶ 27.)  Plaintiff was on suicide observation from

December 24, 2015 to December 30, 2015, after which he was placed back into

segregation.  (DE 46-3, ¶¶ 5-6.)

On January 26, 2016, Plaintiff treated with Dr. Meden, and Dr. Meden

referred Plaintiff to the Crisis Stabilization Program at WCC, "the equivalent of

psychiatric hospitalization."  (DE 1, ¶ 30; DE 117-3, ¶ 5 (SEALED).)  Plaintiff

alleges that he responded that he was not comfortable with a transfer to WCC and

reiterated his safety concern, and he contends that Dr. Meden "stated he would not

have Plaintiff sent there."  (DE 1, ¶ 30.)  However, according to Plaintiff's

treatment note, while Plaintiff was initially resistant to transfer to WCC, "due to

paranoia and unfamiliarity with that setting," Dr. Meden "was able to get

[Plaintiff's] agreement with WCC placement."  (DE 117-4 (SEALED).)  On

January 27, 2016, Plaintiff was informed that he was going to be transferred to

WCC.  Plaintiff claims that he let it be known that "he did not approve of the

disregard of his safety risk" (DE 1, ¶ 31), although Dr. Meden disputes this.  (DE

117-3, ¶ 6 (SEALED).)

### c.  Prior motion and opinion

In Dr. Meden's first motion for summary judgment, he argued, in pertinent

part, that Plaintiff failed to exhaust his administrative remedies as to his Eighth

Amendment claim against him and that Plaintiff cannot establish a claim that Dr.

Meden failed to protect him in violation of the Eighth Amendment by participating

in Plaintiff's transfer to WCC because Plaintiff agreed to the transfer to receive

further treatment of his "mental issues."  (DEs 53, 54.)  In my report and

recommendation to grant in part and deny in part Dr. Meden's motion for summary

judgment, I found that Plaintiff created a genuine factual dispute as Dr. Meden's

subjective awareness of a risk of harm to Plaintiff because Plaintiff offered sworn

statements that he informed the defendants of the safety risk, at or near the time of

his transfer from MBP to WCC, but that they failed or refused to act.  (DE 93 at

37-38.)  Thus, the Court found that "viewing the evidence in a light most favorable

to [Plaintiff], the evidence suggests that there is a genuine issue regarding whether

Dr. Meden was aware of a safety risk at the time of [Plaintiff's] transfer."  (DE 103

at 8.)

 However, I also noted in a footnote that Dr. Meden's involvement with

Plaintiff's transfer to WCC was in the context of his treatment and care of Plaintiff,

which raised the issue of whether Plaintiff's Eighth Amendment claims against Dr.

Meden differed from his Eighth Amendment claim against the prison employees.

However, because Dr. Meden did not address this issue, I declined to address it.

(DE 93 at 37 n.4.; *see also* DE 103 at 8-9 ("Dr. Meden cannot now argue for the

first time [in his objection to the report and recommendation] that even if he was

aware of any risk to [Plaintiff], his decision to transfer [Plaintiff] [in the best

interest of Plaintiff's medical health] was a 'reasonable response to a known risk.'").)

Dr. Meden now addresses that issue, and argues in his second motion for summary judgment that he is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him because his "decision to transfer Plaintiff was an exercise of his medical judgment with Plaintiff's best interest in mind" and that he "did not possess a sufficiently culpable state of mind to act deliberately indifferent towards Plaintiff's medical care or treatment." (DE 116 at 17.)

### d.    Analysis

"Individual liability under Section 1983 typically requires that the defendant have personal involvement in the [alleged] constitutional deprivation." *Jones v. Correctional Medical Servs.*, 845 F.Supp.2d 824, 837 (W.D. Mich. 2012). Dr. Meden's only alleged personal involvement with Plaintiff in this case involved his provision of psychiatric medical care or treatment to Plaintiff while Plaintiff was housed at MBP. (DE 1, ¶¶ 24-27, 30-31.) Accordingly, Plaintiff's Eighth Amendment claim against Dr. Meden should be viewed in that context. *Jones*, 845 F.Supp.2d at 837. Plaintiff has not established that Dr. Meden knew of and disregarded a serious risk to his health or safety when he transferred Plaintiff to the Crisis Stabilization Program at WCC to receive mental health treatment; instead,

the undisputed record demonstrates that this was done in the exercise of Dr.

Meden's best medical judgment.

Dr. Meden has offered a sworn statement that his "decision to transfer

Plaintiff was an exercise of his medical judgment with Plaintiff's best interest in

mind." (DE 116 at 17; DE 117-3, ¶¶ 8-9 (SEALED).) In July 2015, Dr. Meden

evaluated and diagnosed Plaintiff with Brief Psychotic Disorder, Polysubstance

Dependence, Antisocial Personality Disorder and history of noncompliance, and in

September 2015, made the additional diagnosis of Psychotic Disorder and PTSD.

(DE 117-2; DE 117-3 ¶¶ 3-4.) In January 2016, Dr. Meden assessed Plaintiff

several times and observed that Plaintiff "appears to be experiencing the equivalent

of "SHU Syndrome" or "Seg Psychosis," and that "he is enmeshed in his fairly

fixed paranoid delusional system." (DE 117-4.) Dr. Meden asserts that based

upon his extensive ongoing treatment of Plaintiff while he was housed at MBP,

and based on his best medical judgment, he referred Plaintiff to the Crisis

Stabilization Program at WCC in January 2016 for treatment of his mental health

condition. (DE 117-3, ¶¶ 1-5, 7; DE 117-4.) Indeed, Plaintiff himself

acknowledged, in another case, that he "was transferred to [WCC] for mental

health reasons." (DE 117-5 at 3 (SEALED).) Dr. Meden attests that while

Plaintiff was initially reluctant to undergo the transfer "due to a combination of his

increasing psychosis and paranoia with his unfamiliarity of the facility and concern

for adequate treatment," he subsequently agreed to the transfer.  (DE 117-3, ¶ 5; DE 117-4 (noting Plaintiff "stated preference for RTP, but we anticipate a 2 to 3 month wait for that program, with continued exposure to segregation – the inciting psychopathologic mechanism. Today, I was able to get his agreement with WCC placement – his main concern is of getting trustworthy treatment for a sustained period.").)  Plaintiff was then transferred to WCC "for treatment of his mental health condition."  (DE 117-3, ¶ 6.)  Dr. Meden avers that "in [his] medical opinion, based on [Plaintiff's] exhibited symptomatology, transferring [Plaintiff] to a facility so he could receive the necessary treatment was in his best interest" and "failure to do so would have posed a serious medical risk."  (*Id.* ¶ 8.)  Plaintiff fails to offer any evidence in response to refute this evidence.

As this Court already recognized, "[j]ust as prison personnel have a duty to protect prisoners from the violent acts, they also have an obligation to attend to a prisoner's health needs, including mental health needs."  (DE 103 at 10, citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Cosgrove v. Burke*, No. 16-110, 2016 WL 5859058, at *10 (W.D. Mich. Oct. 7, 2016) ("The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates.")).  Although Plaintiff argues that he did not want to be transferred, if Dr. Meden was not "failing to treat" Plaintiff, or "doing less than [his] training indicated was necessary," when he evaluated Plaintiff and recommended he be

transferred to WCC for mental health treatment, then he cannot be said to have consciously disregarded the risk of serious harm in the provision of that medical care.  *See Williams*, 186 F.3d at 692 (noting that the issue is "whether [the doctor] 'kn[ew] of and disregard[ed] an *excessive* risk to inmate health or safety.'") (emphasis in original, quoting *Farmer*, 511 U.S. at 837).  To the extent Plaintiff maintains he should not have been transferred to WCC for treatment, he has at most presented a disagreement with Dr. Meden on the type and amount of mental health treatment needed, which is not sufficient to establish a claim for deliberate indifference to a serious medical need.  *See Estelle,* 429 U.S. at 106-07.  Moreover, "the discretion of prison officials over transfer, assignment, and classification of prisoners is plenary and the courts may not second guess them."  *Leibowitz v. U.S., Dep't of Justice, Bureau of Prisons*, 729 F. Supp. 556, 563 n.4 (E.D. Mich. 1989). "[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind."  *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Dr. Meden's actions do not suggest a "sufficiently culpable state of mind" on his part, such that liability for failure to protect attaches, nor do they demonstrate a deliberate indifference to a serious medical need.  *Farmer*, 511 U.S. at 834 (citations omitted).  Therefore, summary

36

judgment in favor of Dr. Meden on Plaintiff's Eighth Amendment claim is appropriate.

### D. Conclusion

Accordingly, for the reasons set forth above, the Court should grant the State Defendants' motion to dismiss 42 U.S.C. § 1985 conspiracy claims and state law claims (DE 107), grant Defendant Terry Meden, M.D.'s second motion for summary judgment (DE 116), and grant Defendant Hannah Saad, M.D.'s motion to dismiss/summary judgment (DEs 141, 146).  Specifically:

(1) Plaintiff's 42 U.S.C. § 1985 conspiracy claims against the State Defendants should be **DISMISSED** (DE 107);

(2) Plaintiff's Eighth Amendment claim against Dr. Meden should be **DISMISSED** (DE 116);

(3) Plaintiff's Eighth Amendment claim against Dr. Saad should be **DISMISSED** for failure to exhaust administrative remedies (DEs 141, 146); and

(4) The Court should **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims against all Defendants.

In addition, the Court should *sua sponte* grant summary judgment to Derek Rosen on Plaintiff's Eighth Amendment claim against him based on Plaintiff's

failure to exhaust administrative remedies. Acceptance of all of these recommendations would bring this case to a close.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 18, 2018          s/*Anthony P. Patti*

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on December 18, 2018, electronically and/or by U.S. Mail.

s/Michael Williams

Case Manager for the
Honorable Anthony P. Patti