UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE ALEXANDER,

    Plaintiff,

vs.

NICHOLAS CALZETTA, et al.,

    Defendants.
_____/

Case No. 16-cv-13293
Hon. Mark A. Goldsmith

**OPINION & ORDER
ADOPTING THE REPORT AND RECOMMENDATION DATED NOVEMBER 30, 2018 (Dkt. 168); OVERRULING PLAINTIFF D'ANDRE ALEXANDER'S OBJECTIONS THERETO (Dkt. 169); GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 46); ADOPTING THE REPORT AND RECOMMENDATION DATED DECEMBER 18, 2018 (Dkt. 170); OVERRULING PLAINTIFF'S OBJECTIONS THERETO (Dkt. 173); GRANTING DEFENDANTS' MOTION TO DISMISS 42 U.S.C. § 1985 CONSPIRACY CLAIMS AND STATE LAW CLAIMS (Dkt. 107); GRANTING DEFENDANT TERRY MEDEN'S SECOND MOTION FOR SUMMARY JUDGMENT (Dkt. 116); GRANTING DR. SAAD'S MOTION FOR SUMMARY JUDGMENT (Dkts. 141, 146); AND SUA SPONTE DISMISSING ALEXANDER'S EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT DEREK ROSEN FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiff D'Andre Marquis Alexander brought this civil rights action against eighteen defendants, alleging, inter alia, violations of the First, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and various state law claims. See Compl. (Dkt. 1). On September 12, 2018, Magistrate Judge Patti held an evidentiary hearing regarding exhaustion of Alexander's claims against certain Defendants. Magistrate Judge Patti then issued a Report and Recommendation ("R&R"), recommending that the Court find that Alexander failed to exhaust his administrative remedies as to his constitutional claims against certain Defendants, and grant Defendants' motion for summary judgment (Dkt. 46) based on such failure. 11/30/2018 R&R

1

(Dkt. 168). Alexander timely filed objections (Dkt. 169), to which Defendant Hanna Saad filed a response (Dkt. 172).

Magistrate Judge Patti also issued an R&R recommending that this Court (1) grant Defendants' motion to dismiss 42 U.S.C. § 1985 conspiracy claims and state law claims (Dkt. 107); [1] (2) grant Defendant Terry Meden's second motion for summary judgment (Dkt. 116); (3) grant Dr. Saad's motion for summary judgment (Dkts. 141, 146); and (4) sua sponte dismiss Alexander's Eighth Amendment claim against Defendant Derek Rosen for failure to exhaust administrative remedies. 12/18/2018 R&R (Dkt. 170). Alexander timely filed objections (Dkt. 173), to which Defendant Terry Meden filed a response (Dkt. 174).

## I.     BACKGROUND

The factual and procedural background has been adequately set forth by the magistrate judge and need not be repeated here in full. In brief summary, Alexander alleges that he was mistreated by Defendants when incarcerated at Marquette Branch Prison ("MBP") and the Woodland Center Correctional Facility ("WCC"). Alexander states that he was assaulted at WCC on February 12, 2016, and filed a grievance naming MBP and WCC State Defendants (the "Disputed Grievance"). However, Alexander claims that he never received a response nor a receipt with a grievance identifier number, so he was unable to appeal the grievance. The State Defendants argued in their June 27, 2017 motion for summary judgment that Alexander's constitutional claims should be dismissed because Alexander failed to exhaust his administrative remedies. The Court

---

[1] The motion was brought by the "State Defendants": Nicholas Calzetta, Fred Govern, Kristine Giesen, Darrin Viitala, Chad LaCount, Kenneth Niemisto, Erica Huss, and Mandi Salmi (the "MBP State Defendants"); Melvin Watkins, John Lewis, Rodney Lee, Kyle Slaughter, Bobby Houston, and Richard Idemudia (the "WCC State Defendants"); and Daphne Johnson.

determined that there was a question of fact as to whether the Disputed Grievance exhausted Alexander's failure to protect and retaliation claims against the WCC State Defendants.

Magistrate Judge Patti held an evidentiary hearing to resolve the issue on September 12, 2018. He determined that the preponderance of the evidence supported a finding that Alexander did <u>not</u> file the Disputed Grievance, as required by MDOC PD 03.02.130, and he therefore did not exhaust his administrative remedies as to his constitutional claims against the WCC State Defendants. 11/30/2018 R&R at 22. Accordingly, Magistrate Judge Patti concluded that the WCC State Defendants were entitled to summary judgment on Alexander's Eighth Amendment and retaliation claims. Alexander objects to this conclusion.

Magistrate Judge Patti also concluded that Alexander failed to state a claim for conspiracy; that summary judgment in favor of Dr. Meden on his Eighth Amendment claim was appropriate; that Alexander's Eighth Amendment claims against Defendants Saad and Rosen should be dismissed for failure to exhaust administrative remedies, and that the Court should decline to exercise supplemental jurisdiction over Alexander's state-law claims. 12/18/2018 R&R at 37. Alexander has also filed objections to this R&R.

## II. STANDARD OF REVIEW

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

3

## III. ANALYSIS

Alexander raised seven objections to the November 30, 2018 R&R, and four objections to the December 18, 2018 R&R, which the Court will address in turn.

### A. Objections to the November 30, 2018 R&R

#### 1. Objection One: MDOC grievance process was not generally available

Alexander first objects to the magistrate judge's conclusion that the MDOC grievance process was "generally" available. Pl. Obj. at 1. He argues that the fact that he has been using the grievance process for years, and that Defendants presented testimony describing the grievance procedure, does not mean that it was actually available to him on February 12, 2016. Id.

Alexander's arguments do not counsel against a finding that the grievance process was "generally" available. Magistrate Judge Patti examined the Michigan Department of Corrections ("MDOC") grievance procedures, which are set forth in Policy Directive 03.02.130 (dated July 9, 2007). Richard Russell, the grievance section manager for MDOC, further explained these procedures at the September 12 hearing. 9/12/2018 Hr'g Tr. at 7-8 (Dkt. 158). The MDOC procedures are as follows:

> The MDOC's grievance procedures provided that, after attempting to resolve the issue with a staff member, a prisoner may pursue a written grievance through the three-step grievance process. See MDOC Policy Directive 03.02.130 (eff. 3/5/07). A Step I grievance may be filed by completing the specified form and submitting it to the Step I grievance coordinator (Prisoner/Parolee Grievances (CSJ–247A)). Id. ¶¶ P and V. "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." Id. at ¶ R. If the grievant is dissatisfied with the response at Step I, or does not receive a timely response, a Step II grievance may be filed by sending an appeal to the appropriate grievance coordinator using the specified appeal form (Prisoner/Parolee Grievance Appeal (CSJ–247B)). Id. at ¶ BB. Likewise, if the grievant is dissatisfied with the response at Step II, or does not receive a timely response, a Step

4

> III grievance may be submitted using the same appeal form. Id. at
> ¶ FF. Time limits apply for bringing a grievance at each step, as
> well as for the MDOC's responses.

Lee v. Willey, 789 F.3d 673, 679 (6th Cir. 2015). Additionally, as Magistrate Judge Patti noted, Alexander testified that he has "'been utilizing the grievance policy going on nine years' and that he has a 'history of filing grievances and exhausting those grievances in step 3.'" 11/30/2018 R&R at 20-21 (quoting 9/12/2018 Hr'g Tr. at 64-65).

This is sufficient to show that the grievance procedure is <u>generally</u> available, regardless of whether Alexander was somehow prevented from accessing it on February 12, 2016. See Lee, 789 F.3d at 679 (finding that there was "no dispute that the [MDOC] grievance process was generally available" and noting that plaintiff submitted thirteen Step 1 grievances in the days before and after the plaintiff claimed to have submitted his grievance); Bennett v. Mich. Dep't of Corrections, No. 15-14465, 2017 WL 3208591, at *5 (E.D. Mich. July 24, 2017) (MDOC Policy Directive 03.02.130 and an affidavit describing the grievance process in detail "is a sufficient showing that the grievance procedure is 'available' to all MDOC inmates"), report & recommendation adopted, 2017 WL 4230645 (E.D. Mich. Sept. 25, 2017), reconsidered on other grounds, 2018 WL 1522360 (E.D. Mich. Mar. 28, 2018). Alexander's objection is overruled.

### 2. Objection Two: Plaintiff showed that administrative remedies were not available to him

Second, Alexander argues that the magistrate judge erred in finding that he failed to show that administrative remedies were unavailable. Pl. Obj. at 2. He says that none of the witnesses who testified were present on February 12, 2016 when he submitted the Disputed Grievance, and none of the witnesses' testimony proved that he did not file a grievance. Alexander concludes that it is more likely that he submitted the Disputed Grievance than not.

5

Magistrate Judge Patti acknowledged that there were "two permissible views of the evidence," but ultimately concluded that "the totality of the testimony and evidence leads me to conclude that Plaintiff's version of events lack credibility and consistency." 11/30/2018 R&R at 29. Melissa Giraud, the grievance coordinator at WCC on February 12, 2016, testified that she did not remember receiving the Disputed Grievance. 9/12/2018 Hr'g Tr. at 44-45. She noted that she had reviewed a list of all grievances filed by Alexander from January 2016 to March 2016, but that the Disputed Grievance was not on this list. Id. at 44; 58-59. Giraud explained that there is a procedure used to process Step I grievances, whereby she writes the date on top of the form, assigns it a grievance identifier number, and prints a receipt for the prisoner. Id. at 42. The Disputed Grievance does not show that it was received by Giraud and does not contain a grievance identifier number. Alexander admitted that he never received a response or a receipt. Id. at 63. Giraud also testified that she did not remember ever receiving a kite from Alexander regarding the Disputed Grievance. Id. at 52, 58.

As Alexander correctly observes throughout his objections, e.g., Pl. Obj. at 8, Giraud's testimony that she does not remember the Disputed Grievance does not definitively prove that it was not filed. Giraud acknowledged, and Magistrate Judge Patti recognized, that there is a "possibility" that a grievance could have been filed and never made it to her office. 9/12/2018 Hr'g Tr. at 48; 11/30/2018 R&R at 23. But Giraud's testimony, along with the other evidence noted by the magistrate judge, makes it more likely than not that the Disputed Grievance was not filed. This objection is overruled.

   **3. Objection Three: There is credible evidence that Plaintiff submitted the disputed grievance**

Alexander next contends that there was credible evidence that he submitted the Disputed Grievance. Pl. Obj. at 3. He cites to several cases where courts concluded that he had exhausted

6

his remedies where he filed a grievance and did not receive a response: Alexander v. Govern, No. 2:16-cv-166 (W.D. Mich.), and Alexander v. Hoffman, No. 16-cv-12069, 2017 WL 3946258, at *3 (E.D. Mich. Sept. 8, 2017). Alexander also points to a kite that he sent to Giraud on June 4, 2018, which states that he had turned in multiple grievances and had not received receipts. Pl. Obj. at 4.[2]

Magistrate Judge Patti acknowledged in his R&R that Alexander has made this claim before – that he was prevented from appealing his Step I grievance because he never received a receipt or response, and he should therefore be considered to have exhausted his administrative remedies – with "mixed results." 11/30/2018 R&R at 28 n.4. In Hoffman, the magistrate judge found that Alexander had failed to exhaust his remedies, but overlooked a grievance that Alexander filed. 2017 WL 3946258 at *1. Alexander objected to the R&R, stating that he never received a receipt or response to the grievance, and therefore should have been found to have exhausted all of his available administrative remedies. Id. The defendants never responded to Alexander's objections. Id. at *3. The Court did not hold an evidentiary hearing, but noted that "Defendants bear the burden of production and persuasion on the issue of exhaustion," and had "failed to provide any evidence rebutting Plaintiff's claim that he exhausted all administrative remedies that were available to him." Id.

In Govern, Alexander claimed that he gave a Step I grievance to a corrections officer but never received a response. Alexander v. Govern, No. 2:16-cv-166, 6/27/2017 R&R at 3 (Dkt. 53).

---

[2] Alexander attaches to his objection a kite that he sent to Giraud on June 4, 2018. Ex. 1 to Pl. Obj. (Dkt. 169). Alexander wrote, "I turned in multiple grievances and have not received receipts for them. Why is that?" Id. By June of 2018, Alexander was already aware of the impending evidentiary hearing on exhaustion. See 2/26/2018 R&R (Dkt. 93) (recommending a bench trial/evidentiary hearing on exhaustion); 4/3/2018 Am. Op. & Order (Dkt. 103) (adopting R&R in relevant part). The fact that he then kited regarding the Disputed Grievance has no bearing on whether he in fact submitted the Disputed Grievance two years earlier.

7

The magistrate judge held an evidentiary hearing, where various MDOC employees testified that they did not recall specific grievances, but if they had received any, they would have placed them in the correct mailbox. Id. at 4-5. The magistrate judge credited Alexander's testimony, finding that he "has demonstrated that he knows the grievance procedure and exercises his diligence in following these procedures." Id. at 5. He concluded that the defendants had failed to meet their burden of demonstrating that Alexander did not properly exhaust his claims, id. at 6; the district court judge subsequently adopted the R&R, 7/27/2017 Order (Dkt. 55).

Yet in Alexander v. Lee, No. 16-74, 2017 WL 4411812 (W.D. Mich. Apr. 19, 2017), report & recommendation adopted in part and rejected in part on other grounds, 2017 WL 4348872 (W.D. Mich. Sept. 29, 2017), when Alexander alleged that he handed a grievance to a corrections officer and never received a response, the court reasoned that "[t]he problem with Plaintiff's argument is that he never attempted to pursue this grievance at Step II or Step III. . . . Defendant Horrocks has met her burden to show that Plaintiff failed to exhaust all available remedies against her."

Considering the evidence put forth in the instant case, the Court agrees with Magistrate Judge Patti's conclusion that Defendants have met their burden of showing that it is more likely than not that Alexander did not exhaust his administrative remedies. In addition to the testimony from Giraud, discussed above, Magistrate Judge Patti noted several other pieces of evidence that support a finding that Alexander did not file a grievance. Alexander testified that he keeps a stack of grievance forms in his possession, 9/12/2018 Hr'g Tr. at 67; Magistrate Judge Patti observed that "this cuts both ways," 11/30/2018 R&R at 25. Alexander could have drafted the Disputed Grievance at any time – even after February 12, 2016 – or, could have filed a second grievance after failing to receive a response to his first grievance (which he did not do). Id.

8

Magistrate Judge Patti also noted that, on April 3, 2016, Alexander filed a Step II appeal of a grievance that he had previously filed at MBP. See 9/12/2018 Hr'g Tr. at 73. Alexander added the WCC State Defendants and the alleged February 12, 2016 assault to Step II of the MBP grievance. As the magistrate judge noted, it is unlikely that Alexander would have needed to add these Defendants to Step II of a grievance filed at another facility if he believed he had already filed the Disputed Grievance at WCC. See 11/30/2018 R&R at 25.

Alexander also testified that he "always send[s] kites when [he doesn't] receive responses to [his] grievances," and claims to have sent a kite regarding the Disputed Grievance. 9/12/2018 Hr'g Tr. at 68. He testified that he "usually keep[s] carbon copies of all [his] kites," but did not do so in this instance. Id. Giraud testified that she did not recall receiving a kite from Alexander regarding the Disputed Grievance, and said that if she had received such a kite, she would have asked Alexander to send her a copy of the grievance or would have discussed it with him in person. Id. at 56.

Alexander testified that, in the past, he had "even handwritten grievances to where I didn't even receive proper forms to appeal. I done made my own appeals before, which you have copies of." Id. at 70. Magistrate Judge Patti noted the "unlikely scenario" of Alexander taking no steps to follow up regarding a response to the Disputed Grievance undermines the credibility of Alexander's version of events. 11/30/2018 R&R at 26-27. Alexander further stated that, in the past, he "might have to file a grievance multiple times just to get a response or try to have a designated staff member deliver it personally," but he did not do so in this instance. 9/12/2018 Hr'g Tr. at 71.

Other than his own testimony, the only evidence Alexander has to support his version of events is the "goldenrod" copy of the Disputed Grievance. It is undisputed that the goldenrod copy

9

does not have a grievance identifier number, or in any way indicate that it was received by Giraud at Step I. Robinson testified that the goldenrod copy is "proof that a prisoner wrote a grievance. It isn't proof the prisoner filed a grievance." 9/12/2018 Hr'g Tr. at 39. Giraud also confirmed that the fact that a prisoner has a goldenrod copy in their possession is not proof that it was submitted. Id. at 43.

The Court agrees with the magistrate judge that Defendants have met their burden of showing that Alexander did not exhaust his grievance. This objection is overruled.

### 4. Objection Four: Plaintiff's practice of keeping a stack of grievances in his possession should not have had any adverse influence in this case

Alexander argues that his practice of keeping spare grievance forms in his possession shows his diligence, if anything, and that Magistrate Judge Patti's "speculation" that he could have drafted the Disputed Grievance at any time is not a permissible reason to find against him. Pl. Obj. at 5. Alexander contends that making such a finding due to "mere speculation without any basis" would render Ross v. Blake, 136 S. Ct. 1850 (2016), meaningless. Id. at 6.[3]

In Ross, the Supreme Court stated that an inmate "must exhaust available remedies, but need not exhaust unavailable ones." 136 S. Ct. at 1858. The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable

---

[3] Alexander also cites to Johnson v. Tedford, 616 F. Supp. 2d 321 (N.D. N.Y. 2007), and Dole v. Chandler, 438 F.3d 804 (7th Cir. 2006). In Johnson, the court observed that in light of a 2004 decision from the Second Circuit, "several Southern District [of New York] cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review." 616 F. Supp. 2d at 326 (emphasis in original). But here, the magistrate judge concluded that Alexander did not file a grievance, not that he filed a grievance and received no response. Similarly, in Dole, it was undisputed that the prisoner had given his complaint to the guard to mail. 438 F.3d at 808. "Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies." Id. at 811. Here, Magistrate Judge Patti concluded that Alexander was responsible for the failure to exhaust.

of use to obtain relief." Id. at 1859. First, an administrative procedure may operate as a "simple dead end"; second, it may be "so opaque that it become, practically speaking, incapable of use"; and third, prison administrators may "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-1860.

In accordance with Ross, the magistrate judge set out to determine whether Alexander was thwarted from taking advantage of the grievance process. 11/30/2018 R&R at 20. "[D]isputed issues of fact regarding exhaustion under the PLRA present[] a matter of judicial administration that [may] be decided in a bench trial." Lee, 789 F.3d at 678. Magistrate Judge Patti examined all of the evidence available, including Alexander's past practices, and made a factual determination that Alexander was not "thwarted" from completing the grievance process. 11/30/2018 R&R at 29. Alexander does not explain how this conflicts with Ross. His objection is overruled.

> **5. Objection Five: Plaintiff's pattern and practice of sending kites should not have any adverse basis for a ruling against him**

Alexander also claims that his pattern and practice of sending kites should not be held against him. Pl. Obj. at 6. As with Alexander's previous objection, the Court finds that Magistrate Judge Patti properly examined all of the evidence available to him in order to reach his conclusion.

> **6. Objection Six: Plaintiff's failure to proceed to Step II or III of the grievance process was caused by the MDOC**

Sixth, Alexander claims that the only way a Step I grievance can be appealed is to kite the grievance coordinator requesting an appeal and listing the grievance identifier number for that grievance. Pl. Obj. at 6. He claims that courts from both the Eastern and Western Districts of Michigan have ruled that a lack of response with no grievance identified number renders the remedy unavailable – presumably referring to Govern and Hoffman, discussed above. Id. at 7.

Alexander contends that it was error for the magistrate judge to say that Alexander could have appealed the grievance without a grievance identifier number. Id.

The cases cited in the R&R, as well as the MDOC Policy itself, seem to refute Alexander's argument. In Robinson v. DeAngelo, No. 16-10264, 2017 WL 743751, at *5 (E.D. Mich. Jan. 26, 2017), report and recommendation adopted, 2017 WL 733249 (E.D. Mich. 24, 2017), the court observed that although "subsequent steps in the grievance process may be slightly impaired by not having the grievance number properly identified on the paperwork, nothing in this record suggests that plaintiff was thwarted from completing the grievance process because of this issue." In Sanders v. Mich. Dep't of Corrections, No. 11-12563, 2014 WL 2993751, at *4 (E.D. Mich. Mar. 31, 2014), report and recommendation adopted in part, 2014 WL 2993735 (E.D. Mich. July 3, 2014), the plaintiff alleged that he filed a Step I grievance but did not receive a response. "[E]ven assuming that Plaintiff filed a grievance and received no response, the Policy Directive provides that a grievance appeal can be filed within 10 days after the response deadline expires. Plaintiff has provided nothing to show that he appealed his alleged grievance . . . ." Id. (internal citation omitted) The MDOC Policy provides that "[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response." MDOC PD 03.02.130 ¶ BB (emphasis added). Even if Alexander did file a Step I grievance, he does not explain why a failure to receive a timely response made the rest of the grievance procedure "unavailable" to him. See Robinson, 2017 WL 743751, at *5 ("[T]he alleged failure to provide . . . the assigned grievance number(s) does not sufficiently rise to the level of 'interference' with the grievance process.").

Further, even if Alexander were correct that a prisoner is unable to appeal a grievance to Step II or Step III without receiving a grievance identifier, it would have no bearing on his case.[4] The magistrate judge determined that "the preponderance of the evidence supports a finding that Plaintiff did not file the Disputed Grievance as required by MDOC PD 03.02.130[.]" 11/30/2018 R&R at 22. Alexander's objection is overruled.

7. **Objection Seven: Plaintiff's failure to otherwise pursue a grievance response to the grievance is not the law**

Finally, Alexander argues that the law does not require him to file a grievance complaining that he did not receive a response or receipt for his grievance. Pl. Obj. at 7. He is correct. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 995 (6th Cir. 2004) (noting lack of authority "for the proposition that a plaintiff is obligated to follow up on a submitted complaint in order to exhaust

---

[4] The Sixth Circuit held in Boyd v. Corr. Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004), that "[f]ollowing the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." However, in Boyd, the grievance system was structured such that an inmate would appeal his initial grievance upon receipt of the decision from the Facility Grievance Officer. Id. at 992.

Other courts have distinguished Boyd because "the inmate in Boyd did not have the ability to pursue an administrative grievance appeal under the applicable process until he received a response to his initial grievance." Whipple v. Rochelle, No. 15-0040, 2017 WL 9534760, at *7 (M.D. Tenn. Aug. 21, 2017) (distinguishing Tennessee's procedure, which provided that "'if a time limit expires at any stage of the process without the required responses, the grievant may move the grievance to the next stage of the process' . . . [T]he next step in the grievance process, pursuing a grievance appeal, was available to Plaintiff, yet he chose to do nothing."), report & recommendation adopted, 2017 WL 4325275 (M.D. Tenn. Sept. 29, 2017), aff'd, 2018 WL 5018501 (6th Cir. Aug. 23, 2018); see also Weatherspoon v. Dinsa, No. 14-12756, 2015 WL 13741822, at *4 (E.D. Mich. Aug. 4, 2015) ("Even accepting Plaintiff's statement that he in fact filed a timely Step I grievance, his case falls outside the purview of Boyd because the Policy Directive explicitly makes further administrative proceedings available even in the absence of a timely response at Step I or Step II."), report & recommendation adopted, 2015 WL 5634448 (E.D. Mich. Sept. 25, 2015). MDOC's policy allows an inmate to proceed to Step II or Step III even without having received a response to the grievance, and is thus distinguishable from the procedure in Boyd.

administrative remedies"). But Magistrate Judge Patti did not say that this was the law, or that Alexander was required to follow up on his grievance. He only reasoned that, because Alexander had, in the past, filed a grievance when his grievance was ignored, Alexander's failure to file such a grievance here made it more likely that Alexander did not file the Disputed Grievance. Of course, this was not the only evidence that the magistrate judge relied upon, as discussed earlier in this opinion and detailed at length in the R&R.

### B. Objections to the December 18, 2018 R&R

#### 1. Objection One: The Magistrate Judge erroneously speculated when deciding to rule against Plaintiff

In his first objection to the December 18, 2018 R&R, Alexander argues again that Magistrate Judge Patti erroneously speculated regarding his practice of keeping a stack of grievances in his possession, and used this speculation to rule against Alexander. Pl. Obj. at 1 (Dkt. 173). Alexander raised this objection in response to the November 30, 2018 R&R as well; the Court has already addressed this argument. Alexander's objection is overruled.

#### 2. Objection Two: Conspiracy

Alexander next argues that he has established a conspiracy pursuant to 42 U.S.C. § 1983, as he alleged that Defendants made comments about his prior protected conduct. Pl. Mot. at 2-3. He contends that there is a question of fact for the jury to determine whether Defendants had a plan to deprive him of his right to be safe from harm. Id. at 3. He does, however, concede that his claims pursuant to 42 U.S.C. § 1985 should be dismissed. Id. at 2.

Magistrate Judge Patti found that Alexander's complaint "does not provide any allegations establishing a link between the alleged conspirators or any agreement between them – in other words, only conclusory and vague allegations wholly insufficient to satisfactorily plead a § 1983 or § 1985 claim." 12/18/2018 R&R at 25. The Court agrees. Alexander alleges that Calzetta,

14

Govern, Giesen, Viitala, and Salmi "mentioned complaints filed against themselves and their co-defendants, and even discussed the serious safety risk together and still refused to act." Compl. ¶ 54. He alleges that Huss, Niemisto, and LaCount were "in uniformity with their codefendants, and the only reason they refused to act was because of complaints filed on them and their co-workers." Id.

In order to plead a conspiracy claim, a plaintiff must show that (1) a single plan existed, (2) the defendant "shared in the general conspiratorial objective" to deprive the plaintiff of his constitutional or federal statutory rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. Bazzi v. City of Dearborn, 658 F.3d 598, 602 (6th Cir. 2011). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Section 1983." Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003). Alexander's allegations do not contain the specificity needed to survive a motion to dismiss – at best, he alleges that all Defendants were motivated by Alexander having filed previous complaints, but he says nothing of a common plan among Defendants to deprive him of his constitutional rights. He has not even alleged facts that a jury might consider. This claim was properly dismissed.

### 3. Objection Three: Dismissal of State Law Claims

Third, Alexander argues that the Court should not dismiss his state-law claims because the federal claims are still pending. Pl. Mot. at 3. This objection is overruled. The Court adopts the recommendations to dismiss all of Alexander's federal claims; as such, his state-law claims may be dismissed without prejudice. Brown v. Cuyahoga Cty., 517 F. App'x 431, 436 (6th Cir. 2013) ("28 U.S.C. § 1367 allows a district judge to decline to exercise supplemental jurisdiction over

15

state-law claims if the district court has dismissed all claims over which it has original jurisdiction." (ellipsis omitted)).

> **4. Objection Four: Magistrate Judge Patti already addressed the Eighth Amendment claim**

Finally, Alexander argues that Magistrate Judge Patti already addressed the Eighth Amendment claim against Defendant Meden in a prior summary judgment motion, and the Magistrate Judge has now changed his mind. Pl. Obj. at 3. He contends that his exhibit in support of his opposition to Defendant Meden's motion for summary judgment – he does not specify which one – shows exactly how Defendant Meden knew of Alexander's safety risk and disregarded that risk. Id. at 4. He directs the Court to his prior brief.

In order to establish a claim of deliberate indifference under the Eighth Amendment, a plaintiff must meet two requirements. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prison official must be deliberately indifferent to inmate health or safety; that is, he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The Court originally denied summary judgment on the Eighth Amendment claim against Dr. Meden, upholding the magistrate judge's finding that a genuine issue of material fact existed. 4/3/2018 Am. Op. at 7-8. Then, Dr. Meden had argued that Alexander agreed to be transferred to WCC. The Court noted that, in an affidavit, Alexander stated that he informed Dr. Meden that he did not want to be transferred to WCC because of safety concerns, but Dr. Meden transferred him regardless. Id. at 8 (citing Pl. Aff., Ex. 20 to Pl. Resp., ¶¶ 10-11 (Dkt. 86-2)). The Court reasoned that, "viewing the evidence in a light most favorable to Alexander, the evidence suggests that there

is a genuine dispute regarding whether Dr. Meden was aware of a safety risk at the time of Alexander's transfer." Id. Although Dr. Meden had objected to the R&R, arguing that his transfer recommendation was a reasonable response to a known risk, the Court overruled his objection, finding that Dr. Meden had waived this argument by failing to raise it in the motion for summary judgment. Id. at 8-9.

Dr. Meden was permitted to file a second motion for summary judgment, see 5/7/2018 Text-Only Order, where he argues that his "decision to transfer Plaintiff was an exercise in medical judgment with Plaintiff's best interest in mind." Def. Mot. for Summ. J. at 7 (Dkt. 116). As such, Dr. Meden contends that Alexander cannot show that he possessed a sufficiently culpable state of mind that is tantamount to an intent to punish. Id. at 8.

The Court agrees with the dismissal of the Eighth Amendment claim. In an affidavit attached to his response to Dr. Meden's first motion for summary judgment, Alexander stated that he informed Dr. Meden on January 26, 2016 that he did not feel comfortable being transferred to WCC, and Dr. Meden agreed not to send him there. Pl. Aff., Ex. 20 to Pl. Resp., ¶ 10 (Dkt. 86-2). The following day, however, Dr. Meden informed Alexander that he was about to be transferred; Alexander told him that he "did not approve of the disregard of my safety risk." Id. ¶ 11 (emphasis in original). Alexander also points to Dr. Meden's notes from a January 26, 2016 visit, where Dr. Meden wrote that Alexander "has been resistant to our recommendations of WCC placement, due to paranoia and unfamiliarity with that setting." MDOC Med. Records, Ex. 9 to Pl. Resp. (Dkt. 86-3).

Even accepting these facts as true, the Court concludes that Dr. Meden did not violate Alexander's Eighth Amendment rights. Dr. Meden evaluated Alexander in July 2015 and diagnosed him with Brief Psychotic Disorder, Polysubstance Dependence, Antisocial Personality

17

Disorder, and history of noncompliance; in September 2015, he also diagnosed Psychotic Disorder and PTSD. Meden Aff., Ex. 3 to Def. Mot., ¶¶ 3-4 (Dkt. 117-3). When he examined Alexander in January 2016, Dr. Meden observed that Alexander was "enmeshed in his fairly paranoid delusional system." MDOC Med. Records, Ex. 3 to Def. Mot., at PageID.1527 (Dkt. 117-4). In Dr. Meden's medical opinion, "transferring Mr. Alexander to a facility so he could receive the necessary treatment was in his best interest, and above all, failure to do so would have posed a serious medical risk." Meden Aff. ¶ 8.

Dr. Meden did not disregard an excessive risk to Alexander's safety. His medical opinion was that transfer was in Alexander's best interest, due to the treatment available at WCC. Indeed, he believed that a <u>failure</u> to transfer Alexander would have posed a more serious risk to him. Alexander offers no reason to think that Dr. Meden was deliberately indifferent to his health or safety. His objection is overruled.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts the Report and Recommendation dated November 30, 2018 (Dkt. 168); overrules Alexander's objections thereto (Dkt. 169); grants in part Defendants' motion for summary judgment (Dkt. 46); adopts the Report and Recommendation dated December 18, 2018 (Dkt. 170); overrules Alexander's objections thereto (Dkt. 173); grants Defendants' motion to dismiss (Dkt. 107); grants Defendant Meden's second motion for summary judgment (Dkt. 116); grants Defendant Saad's motion to dismiss/summary judgment (Dkts. 141, 146); and dismisses the Eighth Amendment claim against Defendant Rosen. As there are no remaining claims pending before this Court, a judgment shall issue, closing this case.

SO ORDERED.

Dated: March 4, 2019  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 4, 2019.

                                                  s/Kristen MacKay for Karri Sandusky
                                                  Case Manager